**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| NICHOLAS KRUDY, | : | |
| | : | CASE NO. 1:25-cv-02291-PAG |
| Plaintiff, | : | |
| | : | |
| v. | : | JUDGE PATRICIA A. GAUGHAN |
| | : | |
| UNIVERSITY HOSPITALS HEALTH | : | |
| SYSTEM, INC., et al. | : | |
| | : | |
| Defendants. | : | |

**ANSWER TO PLAINTIFF'S COMPLAINT BY DEFENDANTS UNIVERSITY
HOSPITALS HEALTH SYSTEM, INC., UNIVERSITY HOSPITALS CLEVELAND
MEDICAL CENTER, DAVID A. CAMPBELL, III, AND DONALD G. SLEZAK**

For their Answer to Plaintiff Nicholas Krudy ("Plaintiff" or "Krudy") Complaint (the "Complaint"), Defendants University Hospitals Health System, Inc., ("UHHS") University Hospitals Cleveland Medical Center ("UHCMC"), David A. Campbell, III ("Campbell"), and Donald G. Slezak ("Slezak") (collectively, "Defendants") by and through their undersigned counsel, make the following admissions, denials, statements, and defenses:

**INTRODUCTION**

Defendants deny the statements and allegations contained in the Introduction paragraph of the Complaint.

**COMPLAINT**

Defendants deny the statements and allegations contained in the Complaint paragraph of the Complaint.

**PARTIES**

1.      Upon information and belief, Defendants admit the allegations contained in Paragraph 1 of the Complaint.

2.      Defendants admit that UHHS is a non-profit business operating in Cleveland, Ohio and provides certain medical care, but deny the remaining allegations contained in Paragraph 2 of the Complaint.

3.      Defendants admit that Defendant Lewis Brisbois Bisgaard & Smith LLP ("LBBS") is a nationwide law firm with an office located in Cleveland, Ohio, but deny the remaining allegations contained in Paragraph 3 of the Complaint.

4.      Defendants admit that Campbell is an attorney licensed to practice in the State of Ohio, but deny the remaining allegations contained in Paragraph 4 of the Complaint.

5.      Defendants admit that Slezak is an attorney licensed to practice in the State of Ohio, but deny the remaining allegations contained in Paragraph 5 of the Complaint.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

6.      Paragraph 6 of the Complaint contains a legal conclusion to which no response is required.  To the extent that this Court deems a response appropriate, Defendants admit that this Court has jurisdiction over Plaintiff's Complaint.

7.      Defendants deny the allegations contained in Paragraph 7 of the Complaint.  Further answering, Plaintiff was declared a vexatious litigator under Ohio law pursuant to O.R.C. § 2323.52 by the Cuyahoga County Court of Common Pleas in the case captioned *Nicholas Krudy v. University Hospitals Health System, Inc.*, No. CV-25-112548.  A copy of the October 20, 2025 Opinion and Order (the "Vexatious Litigator Order") is attached hereto as Exhibit 1.  The Vexatious Litigator Order deemed Plaintiff to be a vexatious litigator pursuant to O.R.C. 2323.52 and placed filing restrictions upon Plaintiff that require Plaintiff to obtain leave of court prior to filing any lawsuit in the Ohio courts and to dismiss any lawsuits and charges currently pending in

any Ohio court.  Plaintiff failed to obtain leave or Court prior to filing this Complaint or to dismiss this Complaint following the Vexatious Litigator Order.

## FACTS

8.      Defendants admit that Plaintiff filed a complaint in the United States District Court for the Northern District of Ohio captioned *John Koe v. University Hospitals Health System, Inc.*, No. 1:22-cv-01455 (the "2022 Lawsuit"), but deny the remaining allegations contained in Paragraph 8 of the Complaint.  A copy of the complaint filed in the 2022 Lawsuit is attached hereto as Exhibit 2.  Further answering, the 2022 Lawsuit was dismissed without prejudice on October 13, 2022.  A copy of the Memorandum Opinion and Order is attached hereto as Exhibit 3, and a copy of the Judgment Entry is attached hereto as Exhibit 4.

9.      The documents referenced in Paragraph 9 of the Complaint speak for themselves and, therefore, Defendants deny the allegations contained in Paragraph 9 of the Complaint.

10.     The documents referenced in Paragraph 10 of the Complaint speak for themselves and, therefore, Defendants deny the allegations contained in Paragraph 10 of the Complaint.

11.     The documents referenced in Paragraph 11 of the Complaint speak for themselves and, therefore, Defendants deny the allegations contained in Paragraph 11 of the Complaint. Further answering, Judge Polster granted the motion for protective order in the 2022 Lawsuit.  A copy of Defendants' Motion for a Protective Order Seeking an Order that Requires Plaintiff to Communicate Only with Defendants' Counsel of Record with Respect to this Litigation (the "Motion for Protective Order") is attached hereto as Exhibit 5, and a copy of Judge Polster's order granting the protective order is attached hereto as Exhibit 6.

12.     The documents referenced in Paragraph 12 of the Complaint speak for themselves and, therefore, Defendants deny the allegations contained in Paragraph 12 of the Complaint.

13.     Defendants admit that Judge Polster granted the Motion for Protective Order and issued the order attached hereto as Exhibit 6, but deny the remaining allegations contained in Paragraph 13 of the Complaint.

14.     The documents referenced in Paragraph 14 of the Complaint speak for themselves and, therefore, Defendants deny the allegations contained in Paragraph 14 of the Complaint.

15.     Defendants deny the allegations contained in Paragraph 15 of the Complaint.

16.     The documents referenced in Paragraph 16 of the Complaint speak for themselves and, therefore, Defendants deny the allegations contained in Paragraph 16 of the Complaint. Further answering, the Sixth Circuit Court of Appeals issued the following orders relevant to the First Lawsuit, confirming that those claims were properly dismissed: (1) *John Koe v. University Hospitals Health System, Inc., et al*, 22-3952, May 8, 2024 Order (attached hereto as Exhibit 7); and (2) *John Koe v. University Hospitals Health System, Inc., et al.,* 24-4035, August 1, 2025 Order (attached hereto as Exhibit 8).  Answering further, Plaintiff filed a second federal lawsuit in the United States District Court for the Northern District of Ohio captioned *Koe v. University Hospitals Health System, Inc., et al.*, 1:24-cv-00024 (the "Second Lawsuit").  A copy of the complaint filed in the Second Lawsuit is attached hereto as Exhibit 9.  On February 23, 2024, the Court dismissed the complaint in the First Lawsuit on the merits.  A copy of the Order of Dismissal is attached hereto as Exhibit 10.  Plaintiff appealed that order and the United States Court of Appeals for the Sixth Circuit affirmed the dismissal through its August 1, 2025 Order.  A copy of the August 1, 2025 Order is attached hereto as Exhibit 11.

17.     Defendants deny the allegations contained in Paragraph 17 of the Complaint.

18.     Defendants deny the allegations contained in Paragraph 18 of the Complaint.

## COUNT ONE

Discrimination in Violation of R.C. 4112.02(I)

(Against All Defendants)

19.     Defendants restate and reincorporate paragraphs 1 through 18 as if fully restated herein.

20.     Paragraph 20 of the Complaint contains a statement to which no response is required.

21.     Defendants deny the allegations contained in Paragraph 21 of the Complaint.

22.     Defendants deny the allegations contained in Paragraph 22 of the Complaint.

23.     Defendants deny the allegations contained in Paragraph 23 of the Complaint and further deny that Plaintiff is entitled to any relief whatsoever.

## COUNT TWO

Aiding and Abetting Discrimination in Violation of R.C. § 4112(J)

(Against All Defendants)

24.     Defendants restate and reincorporate paragraphs 1 through 23 as if fully restated herein.

25.     Paragraph 25 of the Complaint contains a statement to which no response is required.

26.     Defendants deny the allegations contained in Paragraph 26 of the Complaint.

27.     Defendants deny the allegations contained in Paragraph 27 of the Complaint.

28.     Defendants deny the allegations contained in Paragraph 28 of the Complaint and further deny that Plaintiff is entitled to any relief whatsoever.

## COUNT THREE

Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)

(Against Defendants UH Only)

29.     Defendants restate and reincorporate paragraphs 1 through 28 as if fully restated herein.

30.     Defendants UHHS and UHCMC the allegations contained in Paragraph 30 of the Complaint.

31.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 31 of the Complaint.

32.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 32 of the Complaint.

33.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 33 of the Complaint and further deny that Plaintiff is entitled to any relief whatsoever.

## COUNT FOUR

Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12203

(Against Defendants UH Only)

34.     Defendants restate and reincorporate paragraphs 1 through 33 as if fully restated herein.

35.     Paragraph 35 of the Complaint contains a statement to which no response is required.

36.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 36 of the Complaint.

37.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 37 of the Complaint.

38.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 38 of the Complaint.

39.      Defendants UHHS and UHCMC deny the allegations contained in Paragraph 39 of the Complaint.

40.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 40 of the Complaint and further deny that Plaintiff is entitled to any relief whatsoever.

## COUNT FIVE

Retaliation in Violation of the Genetic Information Nondiscrimination Act, 42 U.S.C. § 2000ff-6(f)

(Against Defendants UH Only)

41.     Defendants restate and reincorporate paragraphs 1 through 40 as if fully restated herein.

42.     Paragraph 42 of the Complaint contains a statement to which no response is required.

43.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 43 of the Complaint.

44.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 44 of the Complaint.

45.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 45 of the Complaint.

46.      Defendants UHHS and UHCMC deny the allegations contained in Paragraph 46 of the Complaint.

47.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 47 of the Complaint and further deny that Plaintiff is entitled to any relief whatsoever.

## COUNT SIX

Interference, Coercion, or Intimidation in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12203(b)

(Against Defendants UH Only)

48.     Defendants restate and reincorporate paragraphs 1 through 47 as if fully restated herein.

49.     Paragraph 49 of the Complaint contains a statement to which no response is required.

50.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 50 of the Complaint.

51.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 51 of the Complaint.

52.     Defendants UHHS and UHCMC deny the allegations contained in Paragraph 52 of the Complaint.

53.      Defendants UHHS and UHCMC deny the allegations contained in Paragraph 53 of the Complaint and further deny that Plaintiff is entitled to any relief whatsoever.

54.     Defendants deny the allegations contained in the PRAYER FOR RELIEF section immediately following Paragraph 53 of the Complaint, including subparts A through F.

55.     Defendants deny each and every allegation not specifically admitted to be true herein.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses in response to Plaintiff's Complaint. By pleading these affirmative defenses, Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff.  In addition,

nothing stated herein is intended or shall be construed as a concession that any particular issue or subject matter is relevant to Plaintiff's allegations.

1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2.     Plaintiff's Complaint is barred by the doctrines of laches, waiver, estoppel, ratification, acquiescence, accord and satisfaction, res judicata, and/or unclean hands.

3.     Some or all of the damages that Plaintiff seeks are not recoverable by law.

4.     Plaintiff's claims fail because his discharge would have occurred regardless of Plaintiff's alleged request for an accommodation.

5.     Plaintiff's claims fail because his discharge would have occurred regardless of his alleged disability or protected activity.

6.     Plaintiff's Complaint is untimely and is barred by the applicable limitations and/or statute of limitations period.

7.     Some or all of the Defendants in the Complaint are immune from liability.

8.     Plaintiff cannot satisfy the "but for" cause for his claims.

9.     To the extent that Plaintiff asserts a claim for retaliation – which he does not – Plaintiff cannot prove the elements of his *prima facie* case or that Defendants' legitimate, non-discriminatory reason was pretext for unlawful retaliation.

10.    Plaintiff cannot prove pretext.

11.    Plaintiff's claims are barred by res judicata and/or collateral estoppel.

12.    Plaintiff's claims fail because he is a vexatious litigator and should be declared such pursuant to federal law.

13.    Plaintiff's claims fail because he was declared a vexatious litigator pursuant to O.R.C. § 2323.52.

14.     Plaintiff's claims fail because he failed to obtain leave of Court prior to filing his Complaint.

15.     Plaintiff's claims fail because he did not dismiss the Complaint as required by the Vexatious Litigator Order.

16.     Plaintiff's Complaint violates federal court orders issued against him by Judge Daniel Polster and/or Judge David Ruiz.

17.     Plaintiff's claims fail because they are frivolous and the filing is made to harass Defendants.

18.     Plaintiff's claims fail because his Complaint and all actions related thereto are done in bad faith.

19.     Plaintiff's claims fail because Plaintiff admits that his claims and allegations are the same asserted in his prior federal court case that was dismissed on the merits.

20.     Plaintiff's claims are untimely.

21.     The Ohio savings statute does not apply to Plaintiff's claims or the Complaint.

22.     Plaintiff's allegations in the Complaint and claims fail because they are defamatory and/or slanderous.

23.     Plaintiff's claims fail because he was not qualified to perform the essential functions of his position and he was unable to complete the requirements of UHCMC's residency program.

24.     Some or all of Plaintiff's claims may fail due to Plaintiff engaging in criminal conduct and/or perjury.

25.     Plaintiff failed to exhaust his administrative remedies.

26.     Plaintiff is estopped by his own acts or omissions from bringing some or all of the claims in the Complaint.

27.     Plaintiff has not sustained any damages proximately caused or actually caused by Defendant.

28.     Plaintiff's claims are barred, in whole or in part, because he failed to mitigate his damages and/or alleged injuries.

29.     In the event that Defendants discover any after-acquired evidence, Plaintiff's claims against Defendants and/or the relief sought by Plaintiff against Defendants may be barred by the doctrine of after-acquired evidence.

30.     Plaintiff's claims fail because Defendants were unaware of any alleged disability suffered by Plaintiff and did not otherwise regard Plaintiff as disabled.

31.     Plaintiff's claims fail because he is not disabled.

32.     Defendants complied with all laws and regulations applicable to Plaintiff's claims.

33.     Plaintiff was treated the same as all other employees.

34.     Plaintiff's discharge was legitimate, non-discriminatory, and according to Defendants' lawful policies.

35.     Injunctive relief is not available to Plaintiff because he has failed to demonstrate that monetary damages are an insufficient remedy.

36.     Expectancy damages are not available to Plaintiff because Defendants' actions were legitimate, non-discriminatory, and according to Defendants' lawful policies.

37.     Compensatory damages are not available to Plaintiff because Defendants' actions were legitimate, non-discriminatory, and according to Defendant's lawful policies.

38.     Plaintiff's Complaint is frivolous and lacks merit.

39.     Because Plaintiff's Complaint is frivolous and lacks merit, Plaintiff is not entitled to an award of costs for this action or attorney's fees.

40.     Plaintiff's claims are barred by his own bad faith.

41.     Plaintiff's claims fail as a matter of law because he cannot satisfy his *prima facie* cases.

42.     Plaintiff cannot prove that Defendants' legitimate, non-discriminatory reason for its actions is pretext for unlawful discrimination or retaliation.

43.     Plaintiff's claims fail as a matter of law because he cannot show that his alleged disability was the "but for" cause for his discharge.

44.     Plaintiff's claim for disability discrimination fail because Plaintiff (1) is not disabled; (2) was not qualified for his position with or without an accommodation; and (3) could not perform the essential functions of his position with or without a reasonable accommodation.

45.     Plaintiff's claims fail because Defendants acted in good faith at all times.

46.     Plaintiff has not and is not suffering from emotional distress.

47.     Plaintiff's claim for punitive damages is barred because the alleged acts or omissions of Defendant: (1) do not rise to the level required to sustain an award of punitive damages; (2) do not evidence malicious, reckless, or fraudulent intent to deny Plaintiff his protected rights; (3) are not so wanton or willful as to support an award of punitive damages; and (4) do not otherwise entitle Plaintiff to punitive damages.

48.     Plaintiff's claims punitive damages in his Complaint are barred because any allegedly discriminatory behavior is contrary to Defendants' good faith efforts to comply with all applicable state and federal laws and because Defendants' actions were legitimate, non-discriminatory, and according to Defendants' lawful policies .

92794272.1                                       12

49.     Plaintiff's claim for punitive damages is barred and any award of such damages would violate Defendants' rights under the federal and state constitutions.

50.     To the extent Plaintiff suffered any symptoms of emotional distress or injury, they were the result of a pre-existing psychological disorder or other causes or factors, and not the result of any act or omission of Defendants.

51.     Plaintiff lacks standing to bring some or all of his claims.

52.     Some or all of Plaintiff's claim fail as a matter of law because Plaintiff failed to satisfy statutory or common law prerequisites prior to filing his Complaint.

53.     Any and all damage or injury complained of was proximately caused by intervening and superseding acts of persons or entities other than this answering Defendants.

54.     Defendants are entitled to an apportionment of liability to other parties and non-parties to this action pursuant to R.C. 2307.23.

55.     Plaintiff's Complaint fails because he concedes in the Complaint that he could not perform the essential function of his position with or without a reasonable accommodation.

56.     Plaintiff's claims are barred on the grounds that Plaintiff failed to provide notice to Defendants of any discrimination or retaliation, if any, and/or failed to pursue internal procedures to remedy any such complaints or problems, and had Plaintiff utilized these procedures some or all of the harm allegedly suffered would have been prevented.

57.     To the extent that Plaintiff complained about any alleged unlawful discriminatory conduct, Defendants took prompt remedial measures reasonably calculated to end any alleged unlawful discrimination.

58.     Plaintiff's claims for retaliation fails as a matter of law because he cannot show that his alleged protected activity was the "but for" cause for his discharge.

59.    Plaintiff's claim for aiding and abetting fails as a matter of law because it is inconsistent with Ohio law and federal law.

60.    Plaintiff's claim for aiding and abetting fails as a matter of law because Defendants acted reasonable and lawful at all times.

61.    Plaintiff's claims fail because he failed to engage in any alleged protected activity.

62.    Plaintiff's claims fail because he was not employed by any of the Defendants at any time relevant to the allegations and claims at issue in the Complaint.

63.    Plaintiff's claims fail because one or more of the Defendants cannot be held liable for Plaintiff's claims pursuant to the law.

64.    Plaintiff's claims fail because Defendants acted in a manner consistent with Judge Polster's protective order.

65.    Defendants had a good faith basis to file the Motion for Protective Order.

66.    Plaintiff's claims fail because Defendants are not covered by the Genetic Information Nondiscrimination Act ("GINA").

67.    Plaintiff's claims fail because Defendants did not have access to and did not possess Plaintiff's protected genetic information.

68.    Plaintiff's claims fail because Defendants did not unlawful utilize Plaintiff's protected genetic information.

69.    Plaintiff cannot satisfy the requirements to prove a claim pursuant to GINA.

70.    Plaintiff's claims fail because Defendants did not unlawful request Plaintiff to any testing or procedures that violate GINA.

71.    Defendant's had a legitimate business need and lawful reason for all actions relevant to the allegations in the Complaint.

14

72.     Campbell and Slezak cannot be held liable for the allegations and claims asserted in the Complaint as a matter of law.

73.     Plaintiff cannot prove the requirements to establish any agency or vicarious liability with respect to Campbell and Slezak.

74.     Plaintiff's claims and the Complaint are barred by res judicata and/or collateral estoppel by virtue of the orders issued by the United States District Court for the Northern District of Ohio and the Sixth Circuit Court of Appeals in the First Lawsuit and Second Lawsuit.

75.     Defendants reserve the right to assert additional affirmative defenses at such time and to such extent as is warranted by discovery and developments in this case.

**WHEREFORE**, Defendants respectfully request that the claims against them raised in the Complaint be dismissed in their entirety with prejudice, that judgment be entered in its favor, and that Defendants recover their costs and expenses, including reasonable attorneys' fees, and such other and further relief to which this Court deems just and appropriate.

## DEFENDANTS' COUNTERCLAIM AGAINST PLAINTIFF

Pursuant to Rule 13(a) of the Federal Rules of Civil Procedure, Defendants and Counterclaimants University Hospitals Health System, Inc., ("UHHS") and University Hospitals Cleveland Medical Center ("UHCMC") (collectively, "Plaintiffs"), by and through undersigned counsel, allege, aver, and state the following counterclaim against Plaintiff and Counterclaim Defendant Nicholas Krudy ("Defendant" or "Krudy"):

## JURISDICTION

1.     This Court has jurisdiction over this counterclaim because it is compulsory pursuant to Federal Rule of Civil Procedure 13(a) because it arises out of the same transaction or

occurrence that is the subject matter of Krudy's Complaint and does not require adding another party over whom the court cannot acquire jurisdiction.

2. The counterclaim is proper based on this Court's prior decision in *Conley v. Smith*, Case No. 5:08CV622, 2009 WL 5955989 (N.D. Ohio March 6, 2009).

3. A current case or controversy exists because Defendant is a vexatious litigator who has filed numerous charges and lawsuits against UHCMC and UHCMC's employees and agents.

4. Defendant has continued to file charges and lawsuits despite the fact that he ceased working for UHCMC in 2021.

5. Despite being declared a vexatious litigator pursuant to O.R.C. §2323.52, Krudy has sought leave to file the complaint at issue in this matter.

6. Accordingly, this Court has jurisdiction over this counterclaim.

## KRUDY'S DISCHARGE FROM THE RESIDENCY PROGRAM

7. UHCMC has operated the Residency Program at all times relevant to the Complaint.

8. Defendant was hired by UHCMC in July of 2019 as a Program Year 1 in the Residency Program.

9. Defendant was licensed to practice medicine while in the Residency Program.

10. Defendant no longer has an active license to practice medicine in Ohio.

11. Upon information and belief, Defendant is no longer involved in medicine and has ceased applying for residency programs.

12. The Program Director for the Residency Program during Defendant's tenure was Cathleen Anne Cerny-Suelzer, M.D. ("Dr. Cerny").

13.     The Associate Program Director, Adult Psychiatry for the Residency Program during Defendant's tenure was Andrew Warner Hunt, M.D. ("Dr. Hunt").

14.     Defendant's performance in the Residency Program was extremely poor.

15.     Defendant acted in an unprofessional manner in the Residency Program.

16.     Defendant's attendance was erratic in the Residency Program.

17.     Defendant's treatment of peers, patients and staff was inappropriate.

18.     The Ohio Civil Rights Commission (the "OCRC"), following an extensive investigation of Defendant's employment history in the Residency Program, concluded that Defendant was not qualified for the Residency Program. A copy of the August 24, 2023 OCRC Letter of Determination is attached hereto as Counterclaim Exhibit 1.

19.     Specifically, the OCRC held:

> "Charging Party was not qualified for his position due to the numerous concerns raised about his performance to include his interpersonal communications, time management, ability to take instructions, poor judgment and deviation from safe clinical practice."

20.     Defendant's performance issues arose within the first month of Defendant's tenure in the Residency Program.

21.     The performance issues were not only recognized by the Residency Program management, but also Defendant's peers.

22.     In March 2020, some of Defendant's peers met with Defendant to discuss their concerns related to Defendant's unprofessional behavior.  After this meeting, the peers that met with Defendant sent an email to the Chief Resident reporting that colleagues had expressed concerns throughout the year regarding Defendant's professionalism, respect and accountability. One of the greatest of these concerns was whether Defendant was getting adequate sleep, or if

something was happening in Defendant's personal life that would benefit from the support of others.

23.     On April 1, 2020, the Chief Resident received an email from peers of Defendant. The peers were expressing concerns about Defendant's general accountability, tardiness and responsiveness.

24.     The peers had spoken to others that had worked directly with Defendant, and those people voiced similar concerns.  Ultimately, his peers wanted to make certain that Defendant was doing well and that there were no health or safety concerns.  It was a common complaint among colleagues that Defendant was hard to get ahold of when he was on-call.  The consensus of his colleagues was that he was difficult to wake up when he was on call.  There were numerous complaints that when staff tried to reach him, he would not answer the phone.

25.     Dr. Cerny and Dr. Hunt discussed these concerns with Defendant at this meeting, as well as concerns that had been raised by others about collegiality with colleagues.

26.     On April 2, 2020, Dr. Cerny received an additional concern from a peer of Defendant regarding Defendant's arrival time on the unit.  She was informed that Defendant would sometimes show up late to the unit without any prior notice of being tardy.  There were additional frustrations and concerns expressed by multiple trainees as well as nursing staff regarding Defendant's availability, responsiveness, and acting as a team player on the unit.

27.     In response to these concerns, Dr. Cerny reached out directly to a few of Defendant's peers in an effort to better understand their concerns.  Those peers very much wanted Defendant to receive feedback in a constructive way so that he could improve in his career.  One of the peers observed a lack of professionalism throughout the program year in his discourse with fellow residents.   Defendant was noted to be disrespectful or dismissive of the concerns,

perspectives or ideas of fellow colleagues, which can make group discussions and collaboration difficult or uncomfortable.  The peers noted many positive experiences with Defendant throughout the year, and felt that he had a lot to contribute to the program.  They expressed that Defendant was a very talented person with a lot of wisdom and could be a benefit to the system, but they did have concerns that felt might warrant some discussion.

28.     On June 17, 2020, Dr. Cerny received an email from a nurse regarding Defendant. This nurse expressed concerns on behalf of several nurses regarding an inability to locate Defendant when he was on duty.  The nurse cited specific examples of times the staff had attempted to locate Defendant -- sometimes for as much as four hours and with the assistance of other Residents – and they were unable to locate him.  One of these times, Security was called, and Defendant was eventually found asleep in a room after security had to open up the door.  Defendant then fell back asleep, and again, staff had to attempt to locate him.  The nursing staff had also indicated that Defendant was dismissive of most staff members with the exception of a select few. It was also noted that Defendant, more than other classmates, struggled to complete work and leave at a reasonable time post call.

29.     The Clinical Competency Committee ("CCC") reviews the work performance of residents in the Residency Program.

30.     On June 17, 2020, the CCC met and finalized the Resident milestones.  Defendant was marked as "conditional upon approval" for professionalism.  There was a specific note on his recommendation that stated:

> "Committee has concerns. Committee discusses concerns regarding chronic tardiness to service and call. Concerns regarding lack of accountability when on call and collegiately with all members of treatment team. Concerns have not improved after feedback and discussion and has remained consistent during the span of the

academic year. PD states she will schedule a meeting at a later date
to discuss committee concerns with Resident."

31.     Due to the peer concerns regarding Defendant's ability to complete the essential functions of his position, Defendant was referred to the Employee Assistance Program (the "EAP").  The purpose of the referral was to verify that medical issues were not impacting Defendant's work performance and, if there were medical issues, to verify that Defendant was accommodated.

32.     The EAP program is confidential – Residency Program management only learned that Defendant completed the EAP referral and whether Defendant needed accommodations. The EAP program is confidential.  Residency Program management would only learn if Defendant had completed the EAP referral and whether Defendant needed accommodations.

33.     UHCMC has learned in litigation that Defendant had medical impairments that may have required accommodations that Defendant failed to disclose to UHCMC during the hiring process or during his employment.

34.     Although aimed at helping Defendant successfully complete the Residency Program, the EAP referral did not help to improve Defendant's work performance.

35.     Rather, on February 23, 2021, five attending physicians employed by the Veterans Administration (the "VA"), part of the Residency Program rotation, notified UHCMC of serious concerns regarding Defendant's medical skills.

36.     The VA advised UHCMC that Defendant was not permitted to rotate to the VA due to patient concerns.

37.     The VA letter raised highly concerning conduct and it could have resulted in Defendant's discharge.

38.     The VA letter is attached as Counterclaim Exhibit 2.

39.     The VA letter concluded that Dr. Krudy's rotation at the VA would end in order to protect patients:

> "In view of the situations above, as well as other behaviors not addressed here, Dr. Krudy has demonstrated a pattern of poor judgment and a lack of understanding of his limitations as a resident-in-training.  He does not seek supervision when indicated.  He dismisses the instructions of consultants of those with much more experience.  Through the deficiencies in judgment and action mentioned above, Dr. Krudy had demonstrated that he is unfit for overnight call in the VA.  His lack of insight cannot be remedied. In view of patient safety, the undersigned recommend that his overnight call duties be curtailed."

40.     The inability to rotate to the VA was grounds for the immediate termination of Krudy's employment with UHCMC.

41.     However, rather than immediately terminating Dr. Krudy, the CCC placed Defendant on a Performance Alert and provided Defendant with the opportunity to agree to a Performance Improvement Plan (the "PIP") that would permit Defendant to agree to a new rotation and performance standards.

42.     During the PIP negotiations, UHCMC continued to learn of attendance and performance issues with Defendant.

43.     Defendant did not cooperate during the PIP process.

44.     As with his interactions with peers and patients, Defendant was unprofessional and uncooperative during the PIP process.

45.     Defendant refused to accept that he had performance issues.

46.     Defendant refused to agree to the PIP requirements.

47.     Defendant refused to meet with Residency Program management to discuss the PIP.

48.     For a number of reasons, including Defendant's unprofessional conduct during the PIP process, Defendant's continuing work performance issues, the concerns raised by the VA

physicians, and continuing peer complaints regarding Defendant's work performance, Defendant was discharged on April 23, 2021.

49.     Any resident would have been discharged for conduct similar to Defendant's conduct.

50.     Defendant was not qualified to be a resident in the Residency Program.

51.     Defendant's employment and discharge have been reviewed by numerous agencies and investigators.

52.     All of the agencies and investigators have concluded that Defendant was treated fairly, that Defendant's work performance was very poor, that Defendant was not qualified to be a resident, and Defendant's discharge was lawful.

### KRUDY'S POST-TERMINATION HARASSMENT OF EMPLOYEES

53.     While still a resident at UHCMC, Krudy filed charges with the NLRB, EEOC and OCRC alleging that the EAP referral was unlawful and that he was being discriminated and retaliated against.

54.     The charges filed during Krudy's employment were dismissed.  In fact, Krudy admitted that the National Labor Relations Board (the "NLRB" or "Board") investigated the charge filed while Krudy was an employee and requested that Krudy withdraw the charge because it lacked merit.

55.     Following his discharge, Krudy essentially changed his profession to a lawyer in order to focus his sole attention to weaponizing the legal system to harass UHCMC, its agents, and employees and to force it to incur significant costs in defending his baseless claims over the last four plus years.

56.     Krudy has been focused on exacting revenge against UHCMC from the date of his first NLRB filing, January 30, 2021 through the date of this filing.

57.     Krudy has posted on Reddit about UHCMC, attended Zoom sessions where the Residency Program was a participant, continued to contact UHCMC employees, and has harassed UHCMC employees and agents in an unrelenting fashion.

58.     Krudy has been singularly focused on UHCMC from April 23, 2021 through the date of this filing.

59.     Krudy learned that when position statements were submitted by UHCMC in response to his charges that he received a copy of the position statement with exhibits for review and response to the investigator.

60.     Krudy systematically identified employees of UHCMC who provided UHCMC with negative information regarding Krudy's work performance and he contacted each of these employees with the intent to change their testimony.

61.     Krudy harassed, threatened and misrepresented facts to these employees in an unlawful attempt to change their testimony or to get the employee to cease being willing to assist UHCMC in defense to Krudy's claims.

62.     Krudy's communications with UHCMC's employees disrupted the work environment and placed patient care at risk.

63.     Krudy's communications with UHCMC's employees resulted in complaints to UHCMC regarding the harassment and threats of lawsuits asserted by Krudy against UHCMC's employees.

64.     Krudy's communications were meant to intimidate, harass, and threaten Plaintiffs and Plaintiffs' employees with respect to his pending Agency Charges.

65. Specifically, Krudy contacted these individuals to intimidate, threaten, and harass them to either assist him with his pending Agency Charges and/or to refrain from assisting Plaintiffs in responding to the Agency Charges.

66. Krudy's threats were explicit: He threatened to file charges, lawsuits, and board complaints against individuals who did not comply with his demands.

67. Krudy's threats were explicit and made clear that he would file litigation against individuals assisting Plaintiffs.

68. For example, Krudy told a former resident the following: "Please let me know where I can serve you as a defendant in the pending litigation."

69. As another example, Krudy told one of Plaintiffs' employees the following:

> "Additionally, as it appears some people are under the impression that Ohio law did away with individual liability in employment law and the ORC is not updated online, you should read HB 352 form last session noting very carefully the remarks about Genaro. The lawmakers only removed individual liability for some causes of action. Notably retaliation and intimidation still carry it. Highly suggest reviewing with your own attorney…"

70. Krudy also sent Dr. Cerny many communications in an attempt to threaten and intimidate her from assisting Plaintiffs with the Agency Charges.

71. When individuals refused to cede to Krudy's demands, Krudy intensified his harassing conduct.

72. For example, Krudy would text Plaintiffs' residents unsolicited messages in an attempt to threaten the residents.

73. Krudy would threaten to provide Plaintiffs' employees' personal contact information to "federal agents."

74.     At one point, long after his termination and even though he was clearly not a candidate for rejoining the Residency Program, Krudy obtained the login credentials for Plaintiffs' residency program fair and logged into the fair.

75.     The residency fair was for prospective residents.

76.     Although prospective residents were supposed to shuffle between sessions, Krudy remained in Dr. Cerny's session for several hours in order to intimidate Dr. Cerny.

77.     Krudy also likened one of Plaintiffs' employees as a Nazi sympathizer due to his refusal to cede to Krudy's demands with respect to the Agency Charges:

> "I remember we talked about ethics.
>
> I don't think got into a discussion about it given the circumstances, but typically boards and societies for independent professionals in medicine or mental health do not respect the 'Eichmann defense'.
>
> [Krudy inserted an attachment of Adolf Eichmann]."

78.     Krudy was advised on numerous occasions to only communicate with UHCMC through outside counsel.  Krudy refused the requests and continued to directly communicate with employees.

79.     In addition to harassing UHCMC employees, Krudy has actively sought to interfere with UHCMC's outside counsel's relationship with UHCMC.

80.     Krudy has sought to get UHCMC's outside counsel disciplined by their law firm employers.

81.     Krudy has sought to get UHCMC to terminate its relationship with UHCMC's law firm.

82.     Krudy has publicly disparaged UHCMC, UHCMC's counsel, and UHCMC's employees.

83.     Krudy's conduct is unreasonable, unlawful and highly inappropriate.

84.     Krudy's harassment of UHCMC and UHCMC's agents caused UHCMC to seek and obtain a protective order in this Court.

85.     Krudy's harassment of UHCMC and UHCMC's agents caused UHCMC to seek an order from the NLRB to require Krudy to act appropriately during NLRB proceedings.

86.     Krudy has not been employed by UHCMC for nearly four years, but his focus in life continues to be UHCMC.

## KRUDY'S CHARGES

87.     Krudy's most effective means for harassing Plaintiffs has been through the filing of dozens of frivolous charges and lawsuits stemming from his prior employment with Plaintiffs and Plaintiffs' defense of Krudy's many charges and lawsuits.

88.     To date, Krudy has filed over 40 charges and amendments with the Equal Employment Opportunity Commission (the "EEOC"), the OCRC, the Board, the Department of Labor (the "DOL"), the Accreditation Council for Graduate Medical Education, the Department of Health and Human Services, and a Title IX charge (the "Agency Charges").

89.     A list of the Agency Charges is attached hereto as Counterclaim Exhibit 3.

90.     The Agency Charges require UHCMC to unnecessarily spend financial and manpower resources.

91.     The Agency Charges are frivolous and filed for the sole purpose to harass UHCMC and UHCMC's employees and agents.

92.     The Agency Charges often repeat charges that have been fully investigated and dismissed.

93.     The OCRC charges have been dismissed on the merits.

94. One of the OCRC charges that addressed Krudy's UHCMC employment was appealed to a Commission Hearing in Columbus, Ohio.

95. The investigator had to present the evidence to the Commission as part of Krudy's appeal.

96. The investigator advised the Commission that based on the OCRC's investigation that Krudy was not qualified to be a resident with UHCMC.

97. The investigator supported the qualifications statement with evidence to the Commission.

98. Through the filing of his many Agency Charges, Krudy learned that the NLRB charges could be filed electronically without costs to Krudy.

99. Krudy has utilized the NLRB charge filing process to file numerous charges from 2021 to the present date.

100. Krudy's NLRB filings are meant to harass UHCMC and UHCMC's employees and agents.

101. UHCMC has unnecessarily expended financial and human resources on responding to Krudy's many NLRB charges.

102. The vast majority of the Agency Charges address post-employment activities.

103. The post-employment activities were UHCMC's responses to Krudy's wrongful actions and UHCMC's defense of the Agency Charges.

104. For example, UHCMC sought a protective order in federal court, that was granted, and Krudy filed an NLRB charge in response.

105. Similarly, Krudy participated in a Sixth Circuit mediation, and he threatened to file NLRB charges against the mediator based on the confidentiality obligations of the mediator.

106.    Krudy filed a charge with the NLRB against UHCMC that included allegations that UHCMC was retaliating against him by not waiving the confidentiality associated with the Sixth Circuit's mediation process.

107.    The allegations as to Krudy's employment were conflicting and ever changing.

108.    Krudy has alleged, in various different court pleadings and Agency Charges, that he was discharged due to his sex, disability, genetics, and purported protected activities.

## KRUDY'S TWO FEDERAL LAWSUITS

109.    In addition to the Agency Charges, Krudy has also filed two federal lawsuits.

110.    The first lawsuit was filed anonymously by Krudy on August 15, 2022 and is captioned *John Koe v. University Hospitals Health System, Inc.*, Northern District of Ohio No. 1:22-cv-01455 (the "First Lawsuit").

111.    The second lawsuit was filed anonymously by Krudy on January 4, 2024 and is captioned *John Koe v. University Hospitals Health System, Inc., et al*, Northern District of Ohio No. 1:24-cv-00024 (the "Second Lawsuit") (the First Lawsuit and Second Lawsuit are collectively referred to as the "Federal Lawsuits").

112.    The Second Lawsuit named nine defendants: (1) UHHS: (2) UHCMC; (3) UHCMC's inside-counsel; (4) UHCMC's outside counsel, David Campbell; and (5) five individuals employed by UHCMC, one of whom is Dr. Cerny-Suelzer, who Krudy has targeted his vendettas against.

113.    The First Lawsuit was filed anonymously. However, in 2024, Krudy filed a notice in the federal court that he was now willing to proceed under his real name.

114.     Similarly, the Second Lawsuit was also filed anonymously.  However, after filing the Second Lawsuit, Krudy advised the federal court that he was now willing to proceed under his real name.

115.     Although Krudy did not disclose his name in the initial filing of either the First or Second Lawsuits, Krudy identified by name many individuals that he accused of wrongful conduct. The Second Lawsuit named a series of individuals as defendants while Krudy sought to proceed anonymously.

116.     Once the First Lawsuit was filed, Krudy sent emails to UHCMC that disparaged UHCMC's counsel.

117.     Krudy's emails were meant to get UHCMC to terminate UHCMC's counsel.

118.     Krudy's emails were knowingly false.

119.     Krudy's emails were unlawful.

120.     Krudy's emails disparaged UHCMC's counsel.

121.     Due to Krudy's emails, UHCMC filed a motion for a protective order in the First Lawsuit.

122.     A true and correct copy of the Motion and attachments is attached as Counterclaim Exhibit 4.

123.     The Court granted UHCMC's motion for a protective order in the First Lawsuit.

124.     The First Lawsuit was dismissed by the federal court and Defendant was given the opportunity to refile in his name.

125.     Defendant elected not to file the lawsuit in his name.

126.     Rather, Defendant appealed the dismissal and the appeal was denied as to the dismissal of the lawsuit on the merits.

127.     Defendant has continued to file motions in the First Lawsuit despite the fact that the lawsuit was dismissed in 2022 and the dismissal was affirmed by the Sixth Circuit Court of Appeals.

128.     The Sixth Circuit Court of Appeals affirmed the dismissal of Krudy's First Lawsuit, but the Sixth Circuit Court of Appeals held that UHCMC should seek a protective order through state court rather than the Federal Rules of Civil Procedure.

129.     The protective order was no longer controlling in 2024.

130.     Upon the protective order no longer being controlling, Krudy again began his harassment of UHCMC's counsel through emails to UHCMC and counsel's employer.

131.     A second motion for protective order was filed with the NLRB.  A true and correct copy of the NLRB filing is attached as Counterclaim Exhibit 5.

132.     Krudy's 2024 conduct was highly inappropriate.

133.     Krudy's statements about counsel were untrue.

134.     Krudy's statements were intended to force UHCMC to hire new counsel to respond to Krudy's Agency Charges and lawsuits.

135.     The Second Lawsuit was a repeat of the factual and legal issues that were dismissed in the First Lawsuit.

136.     The Second Lawsuit named UHCMC employees and agents.

137.     The Second Lawsuit was dismissed on the merits.

138.     Following the dismissal, Krudy filed a post-judgment motion and an appeal.

139.     On August 1, 2025, the Sixth Circuit Court of Appeals issued orders in both the First Lawsuit and the Second Lawsuit (the "Appellate Court Orders").  A copy of the Appellate Court order from the First Lawsuit is attached hereto as Counterclaim Exhibit 6, a copy of the

Appellate Court order from the Second Lawsuit is attached hereto as Counterclaim Exhibit 7.  The Appellate Court Orders affirm the dismissals of the First Lawsuit and the Second Lawsuit.  The Appellate Court Orders terminated the issues set forth in the First Lawsuit and Second Lawsuit and leave no doubt that the allegations, claims, and issues raised therein have been ruled upon on the merits.

## KRUDY CONTINUED TO FILE CHARGES IN EARLY 2025

140.     Krudy is also continuing to file Agency Charges.

141.     In 2024, Krudy filed a federal lawsuit and 5 Agency Charges.

142.     Krudy has filed several Board charges against Plaintiffs and Plaintiffs' attorneys in 2025 – including two in February, 2025.

143.     The most recent Agency Charges have been filed against UHCMC's attorneys.

144.     The charges filed by Krudy in 2024 and 2025 have no relation to his prior employment with Plaintiffs.

145.     The charges filed by Krudy in 2024 and 2025 are focused on the arguments and evidence presented by Plaintiffs' attorneys in defending Plaintiffs against Krudy's frivolous Agency Charges.

146.     In fact, Krudy has attacked Plaintiffs' counsel and the law firms who employ Plaintiffs' counsel in connection with prosecuting the Agency Charges.

147.     Krudy has attempted to have the law firms retained by Plaintiffs terminate the employments of the attorneys representing Plaintiffs in defending the Agency Charges and Federal Lawsuits.

148.     The substance of the charges filed by Krudy in 2024 and 2025 confirm that they do not address his prior employment with Plaintiffs and, instead, focus Plaintiffs' attorneys, Plaintiffs'

defenses in the Agency Charges and Federal Lawsuits, and allegations that did not arise until 2024 and/or 2025.

149.     To be sure, Krudy filed a charge with the EEOC on January 2, 2025 alleging that Plaintiffs' attorney somehow discriminated against Krudy's disability by representing Plaintiffs and defending it against Krudy's Agency Charges and Federal Lawsuits.

150.     Krudy filed a Board charge in July 2024 that alleged UHCMC, through its attorneys, to have engaged in conduct with respect to witness testimony elicited through a hearing that had not yet been undertaken.

151.     Krudy then filed two charges on September 30, 2024.  Charge No. 08-CA-351674 has no bearing to Krudy's prior employment.

152.     Krudy alleges a violation with respect to UHCMC's resident manual that happened allegedly dating back to July 2024 – three years after Krudy's discharge.

153.     The second September 30, 2024 Charge – charge No. 08-CA-351670 – also does not relate to Krudy's prior employment.

154.     Rather, the charge alleges that the protective order filed by Plaintiffs in the Board Hearing somehow violated his rights.

155.     Krudy attributes this conduct to Plaintiffs' attorneys: "[o]n or about July 29, 2024…by its unnamed counsel filed a motion for a Protective Order against Nicholas Krudy…"

156.     Krudy's December 31, 2024 Charge - Charge No. – again does not address Krudy's prior employment.

157.     Instead, this charge again raises allegations concerning Plaintiffs' current policies.

158.    Krudy's February 6, 2025 charge – Charge No. 08-CA-359878 – raises a variety of allegations concerning Plaintiffs' defense of Krudy's board charges and participation in a Board Hearing.

159.    The February 6, 2025 charge again raises allegations against Plaintiffs' counsel.

160.    The February 6, 2025 charge first alleges that Plaintiffs somehow interfered with Krudy's rights by complying with the ALJ's orders with respect to the submission of evidence and arguments with respect to the Board Hearing.

161.    The charge next alleges that Plaintiffs violated Krudy's rights to cross-examining him during the hearing.

162.    Krudy further alleges that the briefing submitted by Plaintiffs to the Board was "irrelevant, immaterial, and detrimental" and resulted in "[u]tter and make calumnies against him…", "[e]xpose him to contempt and hatred including through innuendo and rumor…", and "[d]amage his reputation and his employment prospects.

163.    Finally, Krudy's February 13, 2025 charge raises allegations concerning Dr. Cerny and her response to Krudy's harassing and threatening conduct in 2021.  Krudy's charge is time-barred on its face by more than three years

### KRUDY'S CONDUCT LEADING UP TO THE STATE COURT COMPLAINT

164.    Despite having two pending appeals, Krudy threatened to file a third lawsuit.

165.    Despite the pending appeals and the dismissal of the First and Second Lawsuits on the merits, Krudy claims that he had the right to file a third lawsuit under the Ohio Savings Statute.

166.    Krudy sent Plaintiffs' counsel many emails concerning his proposed third lawsuit.

167.    The emails concerning the filing of Krudy's proposed third lawsuit were sent beginning the week of February 17, 2025.

168.    Krudy concedes in his February 17, 2025, email that his Complaint arises out of the same allegations pled in the First Lawsuit and the Second Lawsuit:

> "In the interest of avoiding unnecessary multiplication of the proceedings prior to the decision in the appeal. (e.g. filing of the action in an Ohio court in accordance with R.C. 2305.19), I would like to propose a tolling agreement that would allow me a reasonable amount of time to recommence the action I attempted to commence in 1:24-cv-00024 (N.D. Ohio) (dismissed February 23, 2024) after the conclusion of the pending appeals in 24-3263 and 24-4035."

169.    On February 18, 2025, Krudy began to contact Plaintiffs' attorney and Plaintiffs' employees to solicit their service address.   A copy of Krudy's February 18, 2025 email to Plaintiffs' employee is attached hereto as Counterclaim Exhibit 8.   Krudy made clear in his email that the purpose of his communication was to obtain the employee's address for purposes of serving them a copy of his third lawsuit:

> "Dear [NAME REDACTED],
>
> I am writing to ask for your confirmation of your current legal name and residential address for the purpose of legal service.
>
> Thank you.
>
> Sincerely,
>
> Nicholas Krudy".

170.    Krudy emailed Plaintiffs' attorney, David Campbell, copied a third party that has no involvement or relation to any of the Agency Charges and Federal Lawsuits, and threatened and disparaged Mr. Campbell:

> "Dear Mr. Campbell,
>
> I was double checking some addresses in preparation for the filing of a complaint.
>
> The Cuyahoga County Treasurer's Office is showing that you have not paid the first half of Y2024 real estate taxes in the amount of [AMOUNT REDACTED]  due for [ADDRESS REDACTED].

They are due by February 20, 2025. (i.e. this Thursday)

On March 3, 2025, a 10% penalty is assessed on past due First Half 2024 Pay 2025 Real Estate Taxes. See https://cuyahogacounty.gov/treasury/pay-your-taxes/tax-collection-calendar .

Just a friendly reminder.

Warm regards,

Nicholas Krudy".

171.    A true and correct copy of Krudy's February 18, 2025 email to Mr. Campbell is attached hereto as Counterclaim Exhibit 9.

172.    The Ohio savings statute does not apply to Krudy's claims and allegations asserted in the Complaint.

173.    The allegations and claims set forth in the First Lawsuit and Second Lawsuit are untimely.

174.    Krudy cannot circumvent the pending First Lawsuit and Second Lawsuit by pleading those same allegations in a third lawsuit.

175.    The Complaint is frivolous.

176.    The Complaint is barred by res judicata.

## THE DECLARATORY JUDGMENT
## ACTION AND THE FIRST STATE COURT COMPLAINT

177.    Due to Krudy's highly frivolous and vexatious conduct, UHCMC filed a declaratory judgment action in the United States District Court for the Northern District of Ohio, captioned *University Hospitals Cleveland Medical Center v. Krudy*, No. 1:25-cv-00339-DAR (the "Declaratory Judgment Action").  The Declaratory Judgment Action seeks to declare Krudy a vexatious litigator pursuant to federal law and for a preliminary and permanent injunction

prohibiting him from filing any charges or lawsuits against UHCMC, UHCMC's employees, UHCMC's attorneys, and UHCMC's agents without first obtaining leave from court.

178.     UHCMC emailed Krudy a copy of the Declaratory Judgment Action the day it was filed.  Krudy, however, ignored the emails and the Declaratory Judgment Action and, incredibly, filed this Complaint two days later.

179.     Krudy actively avoided service of the Declaratory Judgment Action for several weeks, including blocking access to his property through a gate.

180.     Krudy was finally served by UHCMC but refused to timely respond to the Complaint.  UHCMC applied for default with the Clerk of Courts on June 14, 2025.  The default remains pending.

181.     On February 21, 2025 – two days after receiving notice of the Declaratory Judgment Action – Krudy filed a complaint in the Cuyahoga County Court of Common Pleas captioned *Krudy v. University Hospitals Health System, et al.*, No. CV-25-112548 (the "First State Court Lawsuit").  The First State Court Lawsuit asserted the same allegations and claims against the same defendants at issue in the First Lawsuit and Second Lawsuit.  In fact, Krudy conceded to Defendants' counsel and in the complaint filed in the First State Court Lawsuit was a copy of the Second Lawsuit.

182.     UHHS and UHCMC filed a motion to dismiss the complaint in the First State Court Lawsuit, which the trial court converted to a motion to dismiss. A copy of the motion to dismiss is attached hereto as Counterclaim Exhibit 10.  UHHS and UHCMC also filed a motion for summary judgment seeking to have Krudy be declared a vexatious litigator pursuant to O.R.C. § 2323.52.  A copy of the summary judgment motion is attached hereto as Counterclaim Exhibit 11.

183.    Despite these motions, Krudy continued to file various frivolous filings in the First State Court Lawsuit, including motions for leave, motions to strike, and a motion to declare UHHS and UHCMC's counterclaim in the State Court Lawsuit to be in violation of Ohio's anti-SLAPP statute.

184.    On October 20, 2025 the Cuyahoga County Court of Common Pleas issued orders on UHHS' and UHCMC's pending motion for summary judgment and motion to declare Krudy a vexatious litigator.  The first order granted the motion for summary judgment in its entirety.  A copy of that order is attached hereto as Counterclaim Exhibit 12.  The order held that Krudy's claims were barred by the statute of limitations.  Accordingly, the Court granted summary judgment on Krudy's claims and terminated the matter.  The Court's order leaves no doubt that any claims arising out of Krudy's former employment are time-barred and barred by res judicata and/or collateral estoppel.

185.    The second order addressed the motion to declare Krudy a vexatious litigator (the "Vexatious Litigator Order").  A copy of the Vexatious Litigator Order is attached hereto as Counterclaim Exhibit 13.  The Vexatious Litigator Order declared Krudy to be a vexatious litigator pursuant to O.R.C. § 2323.52.  The Court's order further placed filing restrictions upon Krudy that precluded him from "[i]nstituting legal proceedings in the Ohio court of claims or in a court of common pleas, municipal court, or county court" without first obtaining leave of court.  The Court further permitted UHHS and UHCMC to file a motion for a hearing for damages concerning Krudy's frivolous conduct.

## THE SECOND STATE COURT LAWSUIT

186.    On September 19, 2025, Krudy filed the complaint at issue in this matter (the "Second State Court Lawsuit").

187.    The Second State Court Lawsuit does not contain any allegations or claims that arise out of Krudy's former employment with UHCMC.  Rather, the Second State Court Lawsuit addresses UHHS and UHCMC's decision to obtain a lawful protective order against Krudy due to his highly inappropriate and unlawful harassing conduct.  Despite this, Krudy asserts claims arising under Title VII, the Americans with Disabilities Act, and the Genetic Information Nondiscrimination Act.

188.    Incredibly, the Complaint in the Second State Court Lawsuit includes as defendants UHHS' and UHCMC's outside counsel, David A. Campbell, Donald G. Slezak, and their prior lawsuit, Lewis Brisbois Bisgaard & Smith LLP, as defendants.

189.    Krudy's claims in the Second State Court Lawsuit have no basis in law or fact.

190.    The Vexatious Litigator Order was issued by the State Court prior to Plaintiffs' deadline to file an answer and remove the Second State Court Lawsuit.  On October 20, 2025, Plaintiffs served Krudy with a copy of the Vexatious Litigator Order and asked him if he planned to comply with the requirement to dismiss the Second State Court Lawsuit.  A copy of that email is attached hereto as Counterclaim Exhibit 14.   Krudy responded on October 21, 2025, stating: "I do not understand you request and kindly request clarification." A copy of that response is attached hereto as Counterclaim Exhibit 15.  Plaintiffs' counsel responded to Krudy on the same day, quoting the Court's language ordering Krudy to dismiss the Second State Court Lawsuit.  A copy of that email is attached hereto as Counterclaim Exhibit 16.  Krudy failed to respond to the email, and Plaintiffs' counsel informed Krudy on October 22, 2025 that Plaintiffs intended to notify the Court concerning Krudy's refusal to comply with the Vexatious Litigator Order.  A copy of that email is attached hereto as Counterclaim Exhibit 17.

191.     Ultimately, Krudy failed to dismiss the Second State Court Lawsuit prior to the answer and removal deadline, and Plaintiffs were forced to remove this action to federal court and file an answer.  Plaintiffs have filed a motion for contempt in the First State Court Lawsuit, seeking contempt against Krudy for failing to comply with the Vexatious Litigator Order.

192.     Incredibly, despite the Vexatious Litigator Order and the contempt motion filed by Plaintiffs, on October 24, 2025, Krudy sought leave in the First State Court Lawsuit to file the complaint in the Second State Court Lawsuit.  Accordingly, Krudy is not deterred by the Vexatious Litigator Order, and will file many motions for leave to file additional lawsuits and actions against Defendants for the foreseeable future.

## KRUDY'S ADDITIONAL HARASSMENT AGAINST PLAINTIFFS

193.     The Declaratory Judgment Action has not slowed down or otherwise deterred Dr. Krudy from his frivolous filings.

194.     On February 25, 2025, Dr. Krudy filed a motion for relief from the Judge Polster's final decision in the 2022 Lawsuit.

195.     Dr. Krudy's frivolous motion was denied, *sua sponte*, by Judge Polster on February 26, 2025.

196.     Dr. Krudy thereafter appealed Judge Polster's order on March 18, 2025 – despite the 2022 Lawsuit concluding through an appellate decision from the Sixth Circuit Court of Appeals.

197.     On March 19, 2025, Judge Ruiz denied Dr. Krudy's motion to amend his case caption in an effort to reopen the case that was dismissed on the merits.

198.     Likewise, following the filing of the motion to dismiss in the State Court Lawsuit, Krudy sent Plaintiffs' counsel no fewer than ten emails about this matter.

199.    Krudy's emails have attacked counsel, asked counsels' law firm to discipline counsel, and have sent the emails to Plaintiffs asking that they terminate counsel as representatives in the many, many matters filed by Krudy.

200.    For example, Krudy sent two emails on March 28, 2025 concerning Plaintiffs' motion to dismiss in this matter.

201.    Krudy then sent an email on April 1, 2025 taking issue with the arguments in the motion to dismiss and requesting that Plaintiffs provide him with additional legal support and argument for the motion to dismiss.

202.    On April 2, 2025, Plaintiff emailed Defendants' counsel the following:

> "I am writing to ask for confirmation that all Defendants actually authorized the filing of the Motion to Dismiss.
>
> Please confirm that you represent all Defendants in CV-25-112548.
>
> Please confirm that all Defendants actually authorized the filing of the Motion to Dismiss, Motion No. 5240912.
>
> Please have Defendants UH (i.e. UHHS and UHCMC) confirm that they actually authorized the filing of the Motion for Summ. Judgment for a Vexatious Litigator Declaration, Motion No. 5240918.

203.    On April 3, 2025, Krudy filed an additional email requesting that Plaintiffs provide legal analysis and authority concerning the pending motion to dismiss.

204.    During this time frame, Krudy also sent Plaintiffs' counsel many emails concerning the positions taken by Plaintiffs in their pending motion for summary judgment and the pending appeals filed by Krudy.

205.    Additionally, following Plaintiffs' filing their Reply in Support of the Motion to Dismiss - highlighting Krudy's failure to timely respond – Krudy thereafter emailed Plaintiffs'

counsel about the Motion to Dismiss, and made a variety following baseless and defamatory claims.

206.    The April 18, 2025 email was very long, but the below portion highlights Krudy's vindictive, intentional, and frivolous conduct:

"Dear Mr. Campbell, Mr. Slezak, Mr. Chai, and firm:

You have submitted arguments to the Court that are premised on the following false statements of law:

1."A dismissal pursuant to Apple is on the merits" referencing Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999). [Motion to Dismiss]

2."The statute of limitations for [Plaintiff's] O.R.C. § 4112.02 claims expired two years after the termination of his employment." citing O.R.C. § 4112.052(C)(1). [Motion to Dismiss]

3."R.C. § 4112 does not permit for individual liability arising out of employment discrimination claims" [Motion to Dismiss; and Brief in Reply]

"A lawyer must not allow the tribunal to be misled by false statements of law" Prof.Cond.R. 3.3, Comment 2. "Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal." Prof.Cond.R. 3.3, Comment 4."

207.    Krudy copied the firm-wide Managing Partner for Gordon Rees and the Columbus, Ohio Manager Partner on the aforementioned email.

208.    Neither individuals represent Plaintiffs in this matter, nor have the contacted Krudy or otherwise been involved whatsoever in this matter.

209.    Krudy sent a similar email – attacking counsel and making frivolous and defamatory comments therein – concerning Plaintiffs' pending motion to dismiss. Krudy also copied firm-wide Managing Partner for Gordon Rees and the Columbus, Ohio Manager Partner on this email.

210. Moreover, Krudy filed charges with the National Labor Relations Board alleging that Plaintiffs' motion for summary judgment and request to declare him a vexatious litigator are somehow unlawful.

211. Incredibly, Krudy filed a charge with the National Labor Relations Board against Gordon Rees' Columbus Managing Partner, Gregory Brunton.

212. As set forth above, Mr. Brunton has never spoken to Krudy, does not represent Plaintiffs in any of the matters involving Krudy, and has never been involved in this matter whatsoever.

213. Krudy simply included Mr. Brunton on his many emails and filed this charge to further harass, defame, and damage the careers Plaintiffs' counsel.

214. Plaintiffs received notice of the aforementioned charges on May 20, 2025.

215. Additionally, following the filing of the State Court Lawsuit motions, Krudy contacted the Sixth Circuit Mediator and falsely alleged that Plaintiffs had violated the confidentiality clause of the mediation.

216. Krudy's frivolous conduct required Plaintiffs' counsel to have several lengthy discussions with the Sixth Circuit Mediation Department.

217. Krudy has also sent copies of Plaintiffs' filings with the National Labor Relations Board and in response to Krudy's lawsuits, to former residents of UHCMC's residency program.

218. If Krudy is not declared a vexatious litigator and enjoined by this Court, Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys will forever be defending frivolous lawsuits and charges filed by Krudy.

219. Krudy's conduct is intentional.

220. Krudy's lawsuits, claims, and allegations have been and continue to be frivolous.

221. To leave no doubt that Krudy's charges and lawsuits are frivolous, Krudy filed a charge with the Board *prior to the commencement of the Board Hearing*, that alleges Plaintiffs and Plaintiffs' attorneys engaged in unlawful conduct during the course of a hearing that was not set to begin for several days.

222. Unless declared a vexatious litigator by this Court and placed upon filing restrictions, Krudy will continue to file lawsuits and charges against Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys.

223. Unless enjoined by this Court, Krudy will continue to file lawsuits and charges against Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys.

224. Res judicata has not stopped Krudy from filing Agency Charges and lawsuits.

225. Time has not stopped Krudy's irrational focus on UHCMC.

226. Krudy names as defendants and respondents to his Agency Charges and Federal Lawsuits individuals who had no involvement whatsoever in his prior termination.

227. For example, Krudy has filed charges against UHCMC's Chief Legal Officer.

228. UHCMC's Chief Legal Officer had no involvement whatsoever in Krudy's prior employment and termination therefrom.

229. UHCMC's Chief Legal Officer is not principally involved in UHCMC's defense of the Agency Charges and Federal Lawsuits.

230. Krudy has named UHCMC's Chief Legal Officer as a respondent simply to harass him and harass Plaintiffs.

231. Krudy files his Agency Charges and the Second Lawsuit simply to harass Plaintiffs and in an attempt to circumvent this Court.

232.    Krudy contacts Plaintiffs' employees and outside counsel for the sole purpose of filing his next charge.  Krudy then uses his communications with Plaintiffs as the basis for his next charge and then uses that charge and Plaintiffs' defense of that charge as the basis for filing amendments and subsequent charges.

233.    Krudy's litigation is a vicious, malicious, and intentional cycle.

234.    Krudy's litigation tactics are vexatious pursuant to O.R.C. § 2323.52 and the Cuyahoga County Court of Common Pleas has issued the Vexatious Litigator Order declaring such.

235.    Any filing by Krudy at this point is barred by res judicata and/or collateral estoppel.

236.    Any filing by Krudy at this point is frivolous on its face and supports an award of sanctions against Krudy and an award of attorneys' fees to Plaintiffs for responding to the frivolous filing.

237.    If this Court does not identify Krudy as a vexatious litigator, UHCMC, UHCMC's employees, and UHCMC's outside counsel will be defending charges and lawsuits for years to come.

238.    In response to this Complaint, Krudy will most certainly file Agency Charges alleging that he has somehow been harmed by UHCMC asserting its rights.

**COUNT I**
**JUDICIAL DECLARATION**

239.    Plaintiffs incorporate their allegations set forth in Paragraphs 1 through 238 of the counterclaim as if fully rewritten herein.

240.    As set forth above, Krudy has filed more than 40 charges and amendments against Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys with various state and federal agencies.

241. Krudy has also filed the First Lawsuit, the Second Lawsuit, the First State Court Lawsuit, the Second State Court Lawsuit, and many appeals related to the orders issued by Judge Polster and Judge Ruiz in those lawsuits.

242. All of Krudy's Agency Charges, State Court lawsuits, and Federal Lawsuits are frivolous and have been filed simply to harass Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys.

243. Krudy filed the First State Court Lawsuit arising out of the same allegations from the Federal Lawsuits, both of which are on appeal with the Sixth Circuit Court of Appeals.

244. Krudy's Board charges are clearly frivolous. The Board charges take issue with Plaintiffs' representation of itself in response to Krudy's many charges and lawsuits.

245. Unless declared a vexatious litigator, Krudy continue to file charges and lawsuits.

246. Unless declared a vexatious litigator, Krudy will continue to file charges and lawsuits against Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys.

247. In fact, Krudy has already sought leave to file the complaint in the Second State Court Lawsuit which is at issue in this matter. Unless enjoined, Krudy will continue to seek leave from the courts to file many, many more lawsuits and filings against Plaintiffs for the foreseeable future.

248. This Court has the ability to issue a declaratory judgment declaring Krudy to be a vexatious litigator based upon 28 U.S.C. § 1651, 28 U.S.C. § 2201, and this Court's holdings in *Conley v. Smith*, Case No. 5:08CV622, 2009 WL 5955989 (N.D. Ohio March 6, 2009); *Sumbry v. State of Indiana, et al.*, No. 4:06-cv-1322, 2006 WL 3420206 (N.D. Ohio Nov. 27, 2006); *Lomaz v. Ohio Dept. of Commerce, Div. of State Fire Marshall*, No. 5:03-cv-2609, 2005 WL 1126746 (N.D. Ohio Apr. 20, 2006).

249.    The Agency Charges are appropriately considered by this Court when reviewing the vexatious litigator classification for Krudy.

250.    Specifically, in *Riccard v. Prudential Insurance Co*., 307 F.3d 1277 (11th Cir 2002), the Eleventh Circuit addressed a plaintiff who is very similar to Krudy.  Specifically, the Eleventh Circuit found the former employee was similar obsessed with the defendant employer.  *Id.* at 1294 (The "***near obsession regarding his former employer***, injunctive means [was] the only means that offer[ed] any chance of preventing further harassment").

251.    The Eleventh Circuit found that the former employee "launched a bitter campaign against Prudential that has included the filing of four lawsuits; the filing of complaints alleging misconduct by Prudential with the Securities and Exchange Commission, the United States Attorney's Office, the Banking and Insurance Department of one state, and the Agricultural Department of another; the filing of a motion for sanctions against Prudential and some of the attorneys representing it." *Id.* at 1282.

252.    The district court in *Riccard* reasoned that "given Riccard's near-obsession regarding his former employer, injunctive relief is the only means that offers any chance of preventing further harassment of Prudential, further clogging of the judicial machinery with meritless pleadings, and further overloading of already overloaded court dockets." *Id.* at 1295.

253.    The injunction in *Riccard* initially was worded to prohibit Riccard from filing lawsuits against Prudential. *Id.* at 1285. However, following the injunction, Riccard began to file numerous complaints against Prudential with various federal agencies in an attempt to circumvent the injunction and continue his harassment. *Id.*

254.    Prudential filed a motion for contempt and a motion to expand the injunction to prohibit Riccard from filing in any forum against Prudential and Prudential's agents and attorneys.

*Id.* at 1285.  The District Court granted the motions, found Riccard to be in contempt, expanded the injunction, and awarded Prudential its attorneys' fees.

255.    The expanded injunction in *Riccard* prohibited the former employee and anyone acting on his behalf from "filing any action, complaint, claim for relief, suit, controversy, cause of action, grievance, writ, petition, accusation, charge or any similar instrument ... against Prudential, its present, former or future agents, representatives, employees, directors, officers, attorneys, parents, assigns, predecessors or successors ..., in any court, forum, tribunal, self-regulatory organization or agency (including law enforcement), whether judicial, quasi-judicial, administrative, federal, state or local, including Bar disciplinary and/or grievance committees ... whether for pecuniary advantage or otherwise, without first obtaining leave of this Court.... This lawsuit and the lawsuit captioned *Riccard v. Prudential Insurance Co. of Am.,* Case No. 6:99–CV– 1266–ORL–31KRS, and any appeals from those suits, are the only Actions exempted from this Order."  *Id.* at 1298.

256.    In explaining why the injunction needed to be expanded, the district court pointed out that since the injunction was originally issued, Riccard had "expanded his sights to include not only Prudential, but its attorneys" as evidenced by his filing of ethical grievances with the Florida and New York Bar Associations. There was also every reason to believe that Riccard might seek other innovative ways to evade or circumvent the injunction, so the court attempted to foreclose as many of them as possible by broadening the injunction."  *Id.* at 1298.

257.    The Eleventh Circuit reasoned that the injunction that required pre-review of any charges or lawsuits was appropriate so the former employee could not take to carry out his vendetta against Prudential and those associated with it.  *Id.* at 1299.

258.     In relying upon the he Sixth Circuit Court of Appeals' holding in *Filipas v. Lemons,* 835 F.2d 1145, 1146 (6th Cir.1987), the Eleventh Circuit confirmed that "A vexatious litigant does not have a First Amendment right to abuse official processes with baseless filings in order to harass someone to the point of distraction or capitulation."

259.     Krudy has the same vendetta as the plaintiff in *Riccard*.

260.     Krudy has similarly attached UHCMC's attorneys as the plaintiff in *Riccard*.

261.     Krudy has similarly utilized charges to harass his former employer as the plaintiff in *Riccard*.

262.     Plaintiffs, therefore, are entitled to a judicial declaration that Krudy is a vexatious litigator and should be placed through a screening process prior to filing any lawsuits and/or charges against Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys.

## COUNT II
## PRELININARY AND PERMANENT INJUNCTION

263.     Plaintiffs incorporate their allegations set forth in Paragraphs 1 through 262 of the counterclaim as if fully rewritten herein.

264.     As set forth above, Krudy has filed more than 40 charges and amendments against Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys with various state and federal agencies.

265.     Krudy has also filed the First Lawsuit, the Second Lawsuit, the First State Court Lawsuit, the Second State Court Lawsuit, and many appeals related to the orders issued by Judge Polster and Judge Ruiz in those lawsuits.

266.     All of Krudy's Agency Charges, State Court lawsuits, and Federal Lawsuits are frivolous and have been filed simply to harass Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys.

267.    Krudy filed the First State Court Lawsuit arising out of the same allegations from the Federal Lawsuits, both of which are on appeal with the Sixth Circuit Court of Appeals.

268.    Krudy's Board charges are clearly frivolous.  The Board charges take issue with Plaintiffs' representation of itself in response to Krudy's many charges and lawsuits.

269.    Unless enjoined by this Court, Krudy continue to file charges and lawsuits.

270.    Unless enjoined by this Court, Krudy will continue to file charges and lawsuits against Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys.

271.    This Court has the ability to issue an injunction requiring Krudy to obtain leave from the Court prior to filing any lawsuits against Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys based upon 28 U.S.C. § 1651, and the holdings in *Conley v. Smith*, Case No. 5:08CV622, 2009 WL 5955989 (N.D. Ohio March 6, 2009); *Sumbry v. State of Indiana, et al.*, No. 4:06-cv-1322, 2006 WL 3420206 (N.D. Ohio Nov. 27, 2006); *Lomaz v. Ohio Dept. of Commerce, Div. of State Fire Marshall*, No. 5:03-cv-2609, 2005 WL 1126746 (N.D. Ohio Apr. 20, 2006); *Filipas v. Lemons*, 835 F.2d 1145 (6th Cir.1987); *Wrenn v. Vanderbilt Univ. Hosp.*, Nos. 94-5453, 94-5593, 1995 WL 111480 (6th Cir. Mar. 15, 1995); *Riccard v. Prudential Insurance Co.*, 307 F.3d 1277, 1294 (11th Cir 2002).

272.    Plaintiffs, therefore, are entitled to a preliminary and permanent injunction against Krudy from filing lawsuits and/or charges against Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys without prior leave of this Court.

273.    The injunction should provide that Krudy, or anyone on his behalf, shall be prohibited from filing any action, complaint, claim for relief, suit, controversy, cause of action, grievance, writ, petition, accusation, charge or any similar instrument against Plaintiffs, Plaintiffs' employees, Plaintiffs' outside attorneys and counsel, their present, former or future agents,

representatives, employees, directors, officers, attorneys, parents, assigns, predecessors or successors, related entities, members, or insurers, in any court, forum, tribunal, self-regulatory organization or agency (including law enforcement), whether judicial, quasi-judicial, administrative, federal, state or local, including Bar disciplinary and/or grievance committees whether for pecuniary advantage or otherwise, without first obtaining leave of this Court.

**COUNT III**
**TEMPORARY RESTRAINING ORDER**

274.     Plaintiffs incorporate their allegations set forth in Paragraphs 1 through 273 of the counterclaim as if fully rewritten herein.

275.     As set forth above, Krudy has filed more than 40 charges and amendments against Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys with various state and federal agencies.

276.     Krudy has also filed the First Lawsuit, the Second Lawsuit, the First State Court Lawsuit, the Second State Court Lawsuit, and many appeals related to the orders issued by Judge Polster and Judge Ruiz in those lawsuits.

277.     All of Krudy's Agency Charges, State Court lawsuits, and Federal Lawsuits are frivolous and have been filed simply to harass Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys.

278.     Krudy filed the First State Court Lawsuit arising out of the same allegations from the Federal Lawsuits, both of which are on appeal with the Sixth Circuit Court of Appeals.

279.     Krudy's Board charges are clearly frivolous.  The Board charges take issue with Plaintiffs' representation of itself in response to Krudy's many charges and lawsuits.

280.     Unless this Court issues a temporary restraining order, Krudy will file continue to file lawsuit and charges against Plaintiffs, Plaintiffs' employees, and Plaintiffs' attorneys while this matter remains pending.

281.    Indeed, Krudy has sought leave with the Cuyahoga County Court of Common Pleas to file the Complaint in this matter.

282.    This Court has the ability to issue an injunction requiring Krudy to obtain leave from the Court prior to filing any lawsuits against Plaintiff, Plaintiff's employees, and Plaintiff's attorneys based upon 28 U.S.C. § 1651, and the holdings in *Conley v. Smith*, Case No. 5:08CV622, 2009 WL 5955989 (N.D. Ohio March 6, 2009); *Sumbry v. State of Indiana, et al.*, No. 4:06-cv-1322, 2006 WL 3420206 (N.D. Ohio Nov. 27, 2006); *Lomaz v. Ohio Dept. of Commerce, Div. of State Fire Marshall*, No. 5:03-cv-2609, 2005 WL 1126746 (N.D. Ohio Apr. 20, 2006); *Filipas v. Lemons*, 835 F.2d 1145 (6th Cir.1987); *Wrenn v. Vanderbilt Univ. Hosp.*, Nos. 94-5453, 94-5593, 1995 WL 111480 (6th Cir. Mar. 15, 1995); *Riccard v. Prudential Insurance Co.*, 307 F.3d 1277, 1294 (11th Cir 2002).

283.    Plaintiffs, therefore, are entitled to a temporary restraining order against Krudy from filing lawsuits and/or charges against Plaintiffs, Plaintiffs' employees, Plaintiffs' attorneys, their present, former or future agents, representatives, employees, directors, officers, attorneys, parents, assigns, predecessors or successors, related entities, members, or insurers, in any court, forum, tribunal, self-regulatory organization or agency (including law enforcement), whether judicial, quasi-judicial, administrative, federal, state or local, including Bar disciplinary and/or grievance committees whether for pecuniary advantage or otherwise, without first obtaining leave of this Court.

WHEREFORE, Plaintiffs demand judgment and relief against Krudy as follows:

1.    A judicial declaration that Krudy is a vexatious litigator;

2.    A judicial declaration prohibiting Krudy, or anyone on his behalf, from filing any action, complaint, claim for relief, suit, controversy, cause of action, grievance, writ, petition,

accusation, charge or any similar instrument against Plaintiffs, Plaintiffs' employees, Plaintiffs' attorneys, their present, former or future agents, representatives, employees, directors, officers, attorneys, parents, assigns, predecessors or successors, related entities, members, or insurers, in any court, forum, tribunal, self-regulatory organization or agency (including law enforcement), whether judicial, quasi-judicial, administrative, federal, state or local, including Bar disciplinary and/or grievance committees whether for pecuniary advantage or otherwise, without first obtaining leave of this Court.

3. Reasonable attorneys' fees;

4. Costs incurred in prosecuting this action; and

5. Any other appropriate relief that this Court deems just and equitable.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Gordon Rees Scully Mansukhani, LLP
Key Tower, 127 Public Square
Suite 5130
Cleveland, OH 44114
Phone: (216) 302-2531
Fax: (216) 539-0026
Email: dcampbell@grsm.com
dslezak@grsm.com

*Attorneys for University Hospitals*
*Cleveland Medical Center, University*
*Hospitals Health System, Inc., David A.*
*Campbell, III, and Donald G. Slezak*

## **CERTIFICATE OF SERVICE**

A copy of the foregoing was filed with the Court and electronically served on Lewis Brisbois Bisgaard & Smith LLP on October 30, 2025.  A copy was also emailed to Krudyat john@johnkoe.org. A copy was also served on plaintiff via certified mail at his P.O.Box No. 527, Novelty, Ohio 44072.

*/s/ David A. Campbell*
David A. Campbell (0066494)

*One of the Attorneys for University Hospitals Cleveland Medical Center, University Hospitals Health System, Inc., David A. Campbell, III, and Donald G. Slezak*